Williams, Judge,
delivered the opinion of the court:
The Government of the United States participated, with an exhibit, at the Sesquicentennial Exhibition held in Philadelphia, Pennsylvania, in 1926.
The purpose of the Government exhibit was to illustrate the function and administrative faculty of Government, tending to demonstrate the nature of our institutions, and their adaptation to the wants of the people and the progress of our people in the advancement of peace, the arts, and industries.
The exposition was held under the auspices of the Sesquicentennial Exhibition Association, a Pennsylvania corporation organized for that purpose. To enable the Government to participate in the exposition, Congress created the National Sesquicentennial Exhibition Commission, composed *632 of the Secretary of State and the Secretary of Commerce, and gave to the commission authority to appoint a commissioner, whose duty it should be to carry out the provisions of the joint resolution of Congress authorizing the participation of the United States in the exposition. Pursuant to this authority the commission appointed Rear Admiral H. O. Stickney (retired) commissioner of the exposition, with authority to:
“ make appointments of necessary personnel and to fix their compensation, to contract for the purchase of supplies and to approve vouchers in payment therefor; to approve pay rolls and other expenditures; and to assume such general administrative responsibilities as may be necessary for the proper conduct of the business of the commission.”
It was decided that the exhibit of the Treasury Department, in part, should demonstrate the methods employed by the Bureau of the Mint in stamping coin money, and the. methods employed by the Bureau of Engraving and Printing in printing United States currency and securities. It not being desirable to work upon real money, the presses of the Bureau of the Mint turned out medals instead of coins, and the presses of the Bureau of Engraving and Printing turned out engravings instead of currency and other Government securities.
Commissioner Stickney agreed that the exhibition association be allowed to dispose of the output of the presses, with the understanding that the “ cost of all medals, manufacture of all dies, the design of the medals, cost of the electric current, and any additional expense for operation will be taken care of by the association.”
The plaintiff made application to the association for the concession of selling the output of the presses, and on May 3, 1926, was awarded the concession. The nature of the concession, as stated in the plaintiff’s application, was as follows:
“For the sale of the official souvenir medal stamped on the press of the United States Mint, located in Government space, in the Transportation Building, known as building #5.
*633 “ This souvenir medal will be sold at retail at 25c each.
“ Concessionaire is also to have the right to sell a set of Government engravings at retail for the price of 50c or less per set, as mutually agreed upon.
“ Concessionaire to pay all costs of manufacture and marketing, including the cost of dies, and to pay the Sesquicentennial Exhibition Association 50% of the gross receipts from sales of said articles.
“ This space will be located with Government press of the United States Mint, and being Government space there is no charge to the concessionaire for same. * * * ”
The application for the concession, together with certain conditions, numbered 1 to 20, inclusive, appended thereto, was made a part of the concession agreement between the plaintiff and the exhibition association. Condition no. 14 provides:
“ 14. The concessionaire shall promptly pay to all persons, firms, and corporations, including the association, for power, gas, electricity, steam, compressed air, heat, light, water, or other service, wages, materials, supplies, merchandise, and commodities furnished to the concessionaire or used in connection with the construction, installation, equipment, stocking, or operation thereof. * * * ”
The exhibition association, subsequent to the concession agreement of May 3,1926, agreed to furnish the electric current for operating both the presses of the mint and the presses of the Bureau of Engraving and Printing.
The plaintiff was repeatedly requested by the contact officer to forward to him a copy of the agreement with the exhibition association, and was advised that it would be necessary for him to enter into a similar agreement with the Treasury Department. On June 14,1926, plaintiff wrote the contact officer, saying:
“ I am enclosing copy of contract entered into, with the approval of the department, by and between the * * * association and myself covering the sale of the output of the presses * * *.
“It will be observed that the exposition company will furnish electric current for operating both the presses Íí ‡ ^
“ It is also understod by me that I will furnish all necessary blanks used in coining the medals in the mint exhibit-
*634 “ It is also understood by me that any material on which engravings may be printed, other than paper, will be furnished by me.”
The plaintiff’s interpretation of the concession agreement between the association and himself is so obviously wrong that comment upon it is unnecessary, other than to point out that the agreement obligated the plaintiff “ to pay all costs of manufacture and marketing, including dies, * *
Upon the receipt of plaintiff’s letter of June 14, the contact officer wrote plaintiff the letter set out in finding VIII. Plaintiff contends this letter constituted a contract between himself and the defendant, which obligated the Government to furnish all labor and material in connection with the Treasury Department’s exhibit, and to deliver to him the output of the presses of the mint and of the Bureau of Engraving and Printing. His suit herein, in which he claims a loss and damage of $50,000, is predicated on alleged breaches, by the defendant, of this agreement.
Plaintiff’s contention that the letter of June 17,1926, was a contract between himself and the defendant cannot be sustained. The contact officer had no authority to enter into contracts in relation to the exhibit of the Treasury Department at the exposition, that authority being expressly and solely in the commissioner. The contact officer in his testimony frankly disavowed any authority on his part to enter into a contract with the plaintiff, and stated that the letter was not intended fco be a contract but was intended to be, and was, a statement of the Treasury Department’s views of the conditions under which the output of the presses would be turned over to the plaintiff under his concession, these conditions being the same as those under which similar concessions had been conducted at former exhibitions in which the Treasury Department had participated. Granting that the contact officer acted in the utmost good faith, and that the conditions stated in his letter as constituting the agreement between the plaintiff and the Treasury Department as to the plaintiff’s concession were the terms and conditions under which similar concessions had been awarded at former exhibitions, he was without authority to say to the plaintiff *635 that those would be the terms and conditions of his concession, much less to contract with him to that effect. The letter, having been neither authorized nor approved by the commissioner, is in no sense a contract between the plaintiff and the defendant, and his claim, insofar as it is based on alleged breaches of its terms, must fall.
Although the plaintiff had obligated himself in the concession agreement with the exhibition association to pay all costs of manufacture and marketing the output of rthe presses, including the cost of dies, he began, on July 4,1926, to receive and sell such output without any agreement with the defendant as to the nature and extent of such costs. He continued to operate the concession without any agreement with the defendant, written or otherwise, covering these matters until September 1, 1926, when the contract between the plaintiff, the exhibition association, and the commissioner, hereinafter discussed, was entered into.
Almost from the day the Treasury exhibit was opened, July 4, 1926, until it closed November 30 following, the commissioner and the plaintiff were in continuous disagreement as to the manner in which the concession was being conducted by the plaintiff. The commissioner and the contact officer and other officers of the Treasury Department having to do with the exhibit were also in frequent disagreement, they generally being sympathetic with the contentions of the plaintiff.
The concession agreement between the plaintiff and the association gave him the right (1) to receive and sell the official souvenir medal stamped on the presses of the United States Mint, at a retail price of 250 each, and (2) to receive and sell Government engravings printed on the presses of the Bureau of Engraving and Printing at 500 or less per set, as mutually agreed upon.
The concession agreement was secured by a bond, which was expressly made a part of the agreement. Paragraph 6 of the bond provided:
“No change in the contract between the Sesquicentennial Exhibition Association and the principal shall be made without the written consent of the surety.”
*636 Paragraph 6 of the conditions provided:
“ No oral statement or representation made by ¿my officer or agent of the association and no advertisement or written statement or promise in conflict with any of these conditions except by express authorization of its board of directors shall be considered as binding the association.”
Written consent of the surety for change in the concession agreement was at no time given, neither did the board of directors of the association authorize any change in its provisions, hence the conditions in the agreement remained unaltered and were binding upon the plaintiff until September 1, 1926 when the contract between the plaintiff, the association, and the commissioner, was entered into.
Paragraph 18 of the conditions appended to the application and made a part of the agreement, provided that — •
“ Upon the breach of any of these conditions, or of any covenant contained in the application, bond, or license of the concessionaire, the association may, at the request of the director of concessions, revoke said license * *
The plaintiff breached the conditions of the concession agreement in the following manner:
(1) Engravings, which he was authorized to sell at 50 cents per set of six, were sold by him at 25 to 30 cents each, and at $1.00 per set of six;
(2) Souvenir medals coined by presses of the mint, which he was authorized to sell for 25 cents each, were sold by him at 50 cents each;
(3) By furnishing silk handkerchiefs and having them printed on the presses of the Bureau of Engraving and Printing and selling them at the exhibit;
(4) By purchasing vanity cases on the outside and selling them at the Treasury exhibit with the medals coined by the presses of the mint; and
(5) By procuring from sources outside the exposition a high-relief medal, which he sold at the Treasury exhibit for 75 cents.
Because of these breaches of the concession agreement by plaintiff, and his refusal to desist from such practices when *637 requested by the commissioner to do so, and because of his failure up to that time to pay certain costs for labor and material in connection with the concession which the commissioner contended should be borne by him, and his refusal to enter into any agreement providing for the payment of such costs and expenses in the future operation of the concession, the commissioner, on August 27, 1926, with the-consent and approval of the exhibition association, directed that no further output of the presses be turned over to plaintiff, and that work of the presses for use of the plaintiff should not be resumed until satisfactory arrangements had been made with him whereby the United States would be reimbursed for all expenses of labor and material incurred in the operation of the concession. Thereupon the contract of September 1, 1926, was entered into between the plaintiff, the commissioner, and the exhibition association.
There is no merit to the plaintiff’s contention that the contract of September 1, 1926, is void because it was entered into by him under duress and over his protest, and that his liability to the Government for the costs of operating the concession was fixed by the provisions of the letter of June 17, 1926. It is true the plaintiff in the contract of September 1,1926, reserved any rights he may have enjoyed under the letter of June 17, but the reservation is worthless for the reason, already pointed out, that the letter was written without authority on the part of the contact officer and gave the plaintiff no rights which he can assert against the United States. The contract of September 1, 1926, constitutes the only agreement the plaintiff ever had with the defendant covering the costs incident to the operation of the concession. The provisions of the contract are not inconsistent with the obligations assumed by him in the concession agreement of May 3, 1926, with the exhibition association, wherein he assumed “ all costs of manufacture and marketing, including the cost of dies.” It may be that expenses were imposed upon the plaintiff by the contract that had not been exacted by the Government of concessionaires in like circumstances at former exhibitions, in which the *638 Treasury Department bad participated. This fact, however, if true, has no bearing whatever on the validity of the contract or the rights and liabilities of the plaintiff under it. The plaintiff did not have to enter into the •contract. He had a right to stand upon his original concession agreement with the association of May 3 1926, which had been suspended, and the letter of June 17, 1926, which the commissioner had disavowed and revoked, and bring suit in this court for any loss or damage sustained by him by the wrongful suspension of the one or the wrongful revocation of the other. He did not pursue this course but chose rather to enter into the contract of September 1, 1926, which definitely fixed the conditions under which his concession was to be thereafter operated. He is bound by his contract.
The contract provided:
“ 1. That on and after this date nothing shall be coined on the coining press but the official souvenir medal;
“ 2. That on the printing presses nothing shall be made but the engravings from approved plates. Engravings may be made either on paper or on handkerchiefs;
“ 3. That on and after this date the National Sesquicentennial Exhibition Commission appropriation will not furnish any material for operating the presses, or that otherwise may be needed to operate for the benefit of the concessionaire; if such material is furnished the said party of the third part will give his certified check, payable to the United States commissioner, for the actual cost to the Government thereof, promptly upon receipt of such material; also the said party of the third part is to pay the expense of one plate printer and two assistant plate printers, except on Sunday, by reimbursement to the United States commissioner, certified check as above, daily, equal to the pay and subsistence allowance of these three Government employees; * * *”
The plaintiff paid to Commissioner Stiekney $1,877.40 as reimbursement of the pay and allowances of the plate printer and two assistant plate printers employed in the operation of the presses of the Bureau of Engraving and Printing from September 1, 1926, to November 3, 1926. He seeks to recover the amount so paid. It is clear there is no merit to *639 this claim, as payment of this expense was required of the plaintiff by the plain provisions of the contract.
The plaintiff claims he sustained a loss and damage .amounting to $24,000 because the commissioner, without authority in law, limited and curtailed the output of the presses of the Bureau of Engraving and Printing. The -plaintiff contends that he was entitled to receive the output of the presses run continuously during the time the exposition was open for visitors; that there was a demand and sale for the engravings and prints to the extent of the ..capacity output of the presses thus operated, and that by reason of the unauthorized restriction of the running of the •presses the plaintiff was deprived of 82,000 prints he was entitled to receive. There is no provision, either in the -■concession agreement of May 3, 1926, or in the contract of .September 1,1926, covering the manner in which the presses at the exhibit should be operated, or the number of hours ..daily they should be run. Commissioner Stickney took the position from the beginning that the Treasury exhibit, being educational in its nature, and being conducted solely for the purpose of demonstrating the methods employed by .the Bureau of the Mint in stamping coin money, and the methods employed by the Bureau of Engraving and Printing-in printing currency and United States securities, should .not be commercialized, and that the presses should only be run at such times and to such extent, daily, as was required for the proper and intelligent demonstration of their processes. The presses were run in this manner both before and .after the contract of September 1, 1926, was entered into. The conclusion that the Treasury Department never contemplated that its presses at the exhibit should be continuously run for capacity productions, but that they should be . operated solely for the purpose of demonstrating the methods employed by the Government in making money and securities, is justified by every fact and circumstance shown, and is conclusively demonstrated by the letter of Undersecretary Winston to the commissioner, September 8, 1926 (finding .XIII). The Government had the undoubted right to con-duct its exhibit in such manner as was in keeping with its *640 own purposes and dignity, and the plaintiff cannot be heard to complain unless the methods employed by it contravened his contract rights. The contract plaintiff had with the Government for the output of its presses at the exhibit had no provision fixing the quantity of the output, or the time in which the presses were to be operated. We think in these circumstances he was entitled to receive only such output as was incidental to the operation of the-presses for the purposes of the exposition. He has received such output and has no legal claim for anything further on that account.
The plaintiff is entitled to recover $38.46, the cost to him of the blank medals remaining at the exhibit when it was closed November 30, 1926. He is also entitled to recover one-half the sales value of the 1,996 souvenir medals, and of the 6,250 engravings retained by the commissioner, amounting to $509.50. The commissioner having applied this property to the liquidation of the plaintiff’s indebtedness to the United States he is entitled to credit to the amount of its actual value, $547.96.
THE GOVERNMENT’S COUNTERCLAIM
The defendant has interposed a counterclaim consisting of 3 items:
Item 1. For cost of dies or plates made for this exhibit at plaintiff’s request_$1,114. 92
Item 2. For cost of material such as printer’s ink, etc., used in exhibit_ 134. 43
Item 3. For cost of labor and subsistence of one plate printer and two assistants on this exhibit, November 3, 1926, to November 30, 1926_ 710.84
Item 1. — The findings show that before the opening of the exposition, July 1, 1926, the Bureau of Engraving and Printing had made upon request of plaintiff, and by direction of the director of the bureau, certain plates to be used on the presses at the exhibit, at a cost of $775.20, and had made an addition to a certain die of the Liberty Bell, at a cost of $49.00.
It is clear the plaintiff is not liable to the defendant for this material under the contract of September 1, 1926, as *641 that contract, by its terms, was and became effective on and after the date of its execution. The die and plates were made and furnished prior to that date. The plaintiff can not be held liable to the defendant for their cost under the concession agreement of May 3, 1926, as that was an agreement between the plaintiff and the exhibition association. Under that agreement the plaintiff’s liability was to the association and not to the Government. The association had been allowed to handle the concession for the output of the presses upon the distinct understanding that it would take care of the “ cost of all medals, manufacture of all dies, the design of the medals, cost of the electric current, and any additional expense for operation.” The association left the matter of selecting suitable plates for use in connection with the exhibit to the plaintiff, and the Director of the Bureau of Engraving and Printing had notice of that arrangement. The die and plates were delivered by the Bureau to the association and the cost of their manufacture was charged on the books of the Bureau to the association. At the time the plates and dies were made by the Bureau and delivered to the association for use on the Government presses at the ■exhibit, the defendant had no contract or agreement with the plaintiff obligating him to pay the cost of the manufacture of the die and plates. He entered into no subsequent agreement with the defendant assuming such liability, therefore this item of the counterclaim cannot be sustained.
Item £ of the counterclaim is not sustained by competent proof.
Item 3 of the counterclaim $710.84 is for cost of labor and subsistence for one plate printer, and two assistant plate printers, from November 3,1926, to November 30,1926. The plaintiff’s only defense to this item is that the letter of the contact officer of June 17, 1926, upon which he relies, stated that this expense should be borne by the Government. This defense falls with our holding that the letter of June 17 was unauthorized by the commissioner and does not constitute ■a contract between the plaintiff and the defendant. Under the contract of September 1, 1926, the plaintiff is liable to the defendant for this item of the counterclaim, $710.84.
*642 The record of the case is voluminous, consisting of more than 1,200 typewritten pages of oral testimony, and about 100 exhibits. We have given this record careful study and have considered the contentions of the respective parties. The commissioner and the plaintiff differed widely as to the manner in which the concession should be conducted. That more onerous terms were exacted of the plaintiff than had been exacted of concessionaires in like circumstances at former exhibitions at which the processes of the presses of the Bureau of the Mint, and of the Bureau of Engraving and Printing Avere exhibited, clearly appears. That the concession was less profitable to him because of these facts is manifest. We can only deal, however, with the legal question the controversy presents and are not concerned with the personal aspects of the controversy. It may with propriety be said, however, that widely as the plaintiff and the commissioner differed from each other, and bitter as the controversy between them was, there was nothing in the attitude or conduct of either inconsistent with entire good faith and honesty of purpose. The authority to contract on behalf of the Government on all matters relating to the exhibit was solely in the commissioner. No verbal or written understanding the plaintiff may have had with the contact officer, or other officials of the Treasury Department as to the manner in which the concession was to be conducted, or as to his liabilities in respect thereto, was binding upon the Government, unless such agreement or understanding was approved by the commissioner.
Our conclusion is: Plaintiff, on his petition, is entitled to recover $54-7.96. The defendant is entitled to recover on item 3 of the counterclaim $710.84.
It is ordered that a judgment be entered in favor of the United States against the plaintiff in the sum of $162.88.
Whaley, Judge; LittletoN, Judge; and GREEN, Judge, concur.
Booth, Chief Justice, took no part in the decision of this case on account of illness.